IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUREN OLIVEROS,
as Special Administrator
of the Estate of Antonio Munoz,

        Plaintiff,

  vs.                                      No. CIV  02-732 MCA/LFG

BOARD OF COUNTY  COMMISSIONERS
OF BERNALILLO COUNTY et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## ON PLAINTIFF'S MOTION TO COMPEL DEFENDANT GONZALES

THIS MATTER is before the Court on Plaintiff's Motion to Compel Defendant Gonzales to respond to certain interrogatories and requests for production [Doc. 50].  Briefing was completed as indicated by the Notice of Completion of Briefing, filed March 21, 2003.

### Background

Plaintiff Louren Oliveros ("Oliveros") as Special Administrator of the Estate of Antonio Munoz, brings this 42 U.S.C. § 1983 and state tort claims lawsuit against the Board of County Commissioners of Bernalillo County and various law enforcement officers, alleging that the law enforcement officers and County violated the rights of the decedent, Antonio Munoz, by the use of excessive force which resulted in Munoz's death.  The claims against the Board of County Commissioners and the County's Sheriff, Joe Bowdich, are based on § 1983 claims of supervisory and municipal liability.

Following the shooting incident which is the subject of this lawsuit, the officers involved were required under terms of departmental policy to consult with a psychologist. In accord with this policy, Officer James Gonzales consulted with a psychologist.

Interrogatory No. 21 seeks to obtain information concerning the consultation, including who performed it, when, the reasons, etc. Request for Production No. 14 is related in that Plaintiff request documents pertaining to Gonzales' psychological evaluation and treatment. Defendant objected citing privilege and confidentiality. In the response to the interrogatory, however, Defendant did acknowledge attending a meeting with the psychotherapist, disclosed when and where it took place, and also disclosed that the meeting was done pursuant to departmental policy. With respect to the related document request, Defendant raised similar objections and argued that any such documents that exist are in the possession of Bernalillo County.

Prior to the Supreme Court's ruling in Jaffee v. Redmond, 518 U.S. 1, 116 S. Ct. 1923 (1996), there was a conflict in the circuits concerning the existence of a psychotherapist-patient privilege. Indeed, the Tenth Circuit rejected claims of psychotherapist-patient privilege. United States v. Burtram, 17 F.3d 1299 (10th Cir. 1994). However, with the Supreme Court's 1996 ruling, all federal judicial districts in the country now adhere to some form of the privilege.

> The Supreme Court in Jaffee rejected the notion that the federal courts were forever bound by the privileges recognized under common law and noted that the rules were required to be interpreted in light of reason and the public interest. The Court recognized that the privilege was needed to facilitate communication between the psychotherapists and their patients if effective treatment of the patients was to be expected. The Court noted that this goal would serve the public interest . . . .

Cotchett, J., Federal Courtroom Evidence, 4th Ed., § 501.5 (2002).

In adopting a federal privilege, the U.S. Supreme Court soundly rejected the balancing approach traditionally used by federal courts. For example, balancing one party's right of discovery with the opposing party's right to be free from intrusive and burdensome inquiries generally requires a court to consider: the requester's need for the information from this particular source; the relevance of the requested information to the litigation; the burden of producing the sought after materials; and the harm or difficulty which would be caused to a party seeking to protect information. Burka v. U.S. Dept. of HHS, 87 F.3d 508, 517 (D.C. Cir. 1996).

Some of the reasons for the Supreme Court's rejection of the balancing test are set out in the treatise of Federal Courtroom Evidence.

> The Court expanded the coverage of the rule to include social workers and rejected the balancing procedures recommended by the Seventh Circuit as a condition for admission on the basis that communications between the therapist and patient would be chilled if they had to wonder whether a court would later protect the communication as confidential.

Federal Courtroom Evidence, § 501.5.

While the Court recognizes that Jaffee dealt with admissibility rather than discoverability, the Court's rationale in Jaffee applies with equal force here. The reason for a departmental policy compelling an officer involved in a citizen shooting to see the department psychotherapist is obvious on its face. The taking of a human life under any circumstance is traumatic, and the effects on the person responsible could well last a lifetime. The need for immediate counseling, discussion and, to the extent necessary, treatment is to protect the affected officer. The officer's ability to share her or his feelings, grief, or whatever emotion is intertwined with the event, would undoubtedly be chilled if the officer was aware that whatever she or he told the psychotherapist could be discovered. Moreover, an excessive chilling effect would result if the officer was aware that her or his innermost feelings would be conveyed to the family that actually suffered the loss.

3

This situation is different from that where a party purposely puts his or her emotional condition at issue by seeking monetary damages in a lawsuit. A court has less difficulty ordering a plaintiff who is claiming to have suffered significant emotional harm as a result of alleged misconduct of a defendant to disclose prior mental or emotional treatment. The reason for the distinction is significant. If a plaintiff contends that whatever condition the plaintiff currently has was proximately caused by acts or omissions of a defendant, and there is evidence which demonstrates that the condition pre-existed or that there were other stressors that caused or contributed to the cause of the present condition, then that information is specifically relevant to the claims or defenses.

In this case, the information sought is not from one who is seeking monetary damages from another, but from the defendant police officer.

Nonetheless, it is not clear from Defendants' objections and briefing to what extent Gonzales may have expected his communications with the psychotherapist to be confidential and/or whether he expected a report to be prepared and placed in his personnel file. *See* Speaker v. County of San Bernardino, et al., 82 F. Supp.2d 1105, 1115-17 (C.D. Calif. 2000) (privilege applies where employer told the officer that his communications with the therapist were confidential and where the department did not receive a copy of the therapists' reports). Thus, in consideration of the significant need for such a privilege in exactly this type of case, along with the uncertainty of knowing what type of report was or was not created and what expectations of confidentiality, if any, Gonzales had, the Court concludes that an *in camera* inspection will best serve the interests of this case. Accordingly, any therapy reports or notes concerning Gonzales' therapy sessions after this shooting should be produced to the Court for an *in camera* inspection. In addition, to the extent the officer gave the psychotherapist a factual recitation of the shooting, and to the extent that recitation is present in the psychotherapist's notes or reports, they should be provided to the Court. Defendants should indicate

4

whether any of these documents were submitted to it and/or placed in Gonzales' personnel file after the shooting incident. The Court will then makes its determination, in view of the Jaffe decision, whether some, all or none of the documents should be produced.

Interrogatory No. 22 seeks similar information as to any psychological evaluation Defendant Gonzales underwent as a condition of employment. Gonzales raised the same objections here that he set forth in his response to Interrogatory No. 21. However, he further provided that he did undergo a pre-hire psychological evaluation as is required by the department. He also consulted with a therapist, per department policy, after one other shooting in which he was involved.

Any reports or notes from the therapy session(s) after the unrelated shooting should also be supplied to the Court for an *in camera* inspection, based on the same rationale set out above. However, the Court will not direct Officer Gonzales to provide any further information regarding his pre-hire psychological testing because Gonzales has not made his mental health an issue in this case. Information regarding the pre-hire evaluation is not relevant, nor likely to lead to the discovery of admissible evidence. Kamper v. Gray, 182 F.R.D. 597, 600 (E.D. Mo. 1998).

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel [doc. 50] is denied in part, and granted in part, to the extent that the above-described documents are to be supplied to the Court for an *in camera* inspection within 20 (twenty) days after entry of this Order.

                                                Lorenzo F. Garcia
                                                Chief United States Magistrate Judge