IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LOUREN OLIVEROS,
as Special Administrator
of the Estate of Antonio Munoz,

        Plaintiff,

  vs.                              No. CIV  02-732 MCA/LFG-ACE

BOARD OF COUNTY  COMMISSIONERS
OF BERNALILLO COUNTY et al.,

        Defendants.


## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DEFENDANT COUNTY TO RESPOND TO REQUESTS FOR ADMISSION

THIS MATTER is before the Court on Plaintiff's Motion to Compel Defendant Board of

County Commissioners of Bernalillo County ("County") to Respond to Plaintiff's Requests for

Admission [Doc. 83].  The County filed a Response [Doc. 93], and briefing was complete as indicated

by the Notice of Completion of Briefing, filed May 28, 2003.

### Background

Plaintiff Louren Oliveros, as Special Administrator of the Estate of Antonio Munoz, brings

this 42 U.S.C. § 1983 and state tort claims lawsuit against the County and various law enforcement

officers, alleging that Defendants violated the rights of the decedent, Antonio Munoz, by the use of

excessive force resulting in Munoz's death.  The claims against the County and the County's Sheriff,

Joe Bowdich, are based on § 1983 claims of supervisory and municipal liability.

Plaintiff sent a set of Requests for Admission to the County and, asserting that some of the

County's responses are inadequate, now brings this Motion to Compel Responses.  Plaintiff asks that

the Court either rule that the matters be deemed admitted or that an amended answer be served, as

provided in Fed. R. Civ. P. 36(a).  The Court finds that Defendant's objections are justified and that

the Motion to Compel is not well taken.  The Motion will be denied.

The four Requests at issue on this Motion are as follows:

Request No. 2:  Admit the veracity of the APD Supplementary Offense Report entitled
"Firearm and Tool Mark Detail Report," Case No. 00-557123, prepared by Michael G. Haag, dated
August 31, 2000, a copy of which is attached hereto and marked as "Exhibit 1."

Request No. 4:  Admit the veracity of the APD Supplementary Offense Report entitled
"Firearm and Tool Mark Detail Report," Case No. 00-557123, prepared by Michael G. Haag, and
dated November 28, 2000, a copy of which is attached hereto and marked as "Exhibit 2."

Request No. 6:  Admit the veracity of the FBI Report of Examination, addressed to Sheriff
Joe Bowdich, dated July 26, 2001, FBI Case No. 95A-HQ-133-2-3, and prepared by Jodie Blakey
Webb, FBI Materials Analysis Unit, a copy of which is attached hereto as "Exhibit 3."

Request No. 8:  Admit the veracity of Table 1: FBI Laboratory Glass Material Analysis
Matrix, a copy of which is attached hereto as "Exhibit 4."

The County submitted identical responses to Requests 2, 4, and 6, stating as follows:  "The

Defendant objects to this Request as calling for speculation and opinion by the Defendant in that

Defendant's employees did not author nor perform the underlying work reported in Exhibit "1" [and

"2" and "3"] and, therefore, can neither admit nor deny its veracity."

In response to Request No. 8, Defendant stated:  "Defendant objects to this Request as calling

for speculation and opinion.  This Matrix is a compilation of data from analysis performed by others

who are not employees of the Defendant and the veracity of this Matrix is dependent upon such

underlying analysis."

**Discussion**

Requests for admission differ from other discovery devices in that they are not necessarily used to obtain information, but rather to expedite trial and relieve parties of the burden and expense of proving facts which are undisputed.  Kershner v. Beloit Corp., 106 F.R.D. 498 (D. Me. 1985). A request for admission is not, properly speaking, a discovery tool at all, but is simply a device for determining what facts are still in dispute and what facts can be eliminated from the case so as to narrow the issues that need to be tried.

Upon receipt of a request for admission, the responding party has four options:  (1) admit the request, in part or in full; (2) deny the request, in part or in full; (3) set forth reasons why the party cannot admit or deny the request; or (4) object to the request by stating a specific objection or applying for a protective order.  Fed. R. Civ. P. 36; Steven Baicker-McKee, et al., Federal Civil Rules Handbook 665-66 (2003).  If the responding party is genuinely unable to admit or deny the requested admission, the party may so state but must describe in detail why, after reasonable inquiry, the party can neither admit nor deny.  Panara v. Hertz Penske Truck Leasing Inc., 122 F.R.D. 14 (E.D. Pa. 1988).

In the present case, the County argues that it cannot admit or deny the "veracity" of the documents at issue, because either its employees did not prepare the documents or, in the case of the "Matrix" request, its employee did prepare the document but did so merely by compiling test results produced by other persons.  Plaintiff argues that, because the County cooperated with other law enforcement agencies (*i.e.* the Albuquerque Police Department and the FBI) in the investigations leading to these reports, it can ascertain the veracity of the reports by making "reasonable inquiry" of the other agencies and should therefore be required to respond to the Requests with a specific

admission or denial.

The Court finds that the County's objections are well taken.  Although it is proper to use Requests for Admission as a means of authenticating documents prior to trial, it is not proper to force a party to admit or deny the veracity of the contents of a document prepared by another agency.

> [I]t is not grounds for objection that an RFA [Request for Admission] asks a party to authenticate a document, and indeed this is one of the purposes for which Rule 36(a) states RFAs are properly served.  In addition, none of the above RFAs ask plaintiff to admit that the findings, recommendations, or statements are true, they only ask plaintiff to admit that the specified documents contain such statements, finding, recommendations, etc. . . .  [T]he RFAs only ask plaintiff to admit that a specific document contains a specific passage [which is proper], they do not ask plaintiff to admit or deny the veracity of any passage [which would be improper].

Doe v. Mercy Health Corp., No. Civ. A 92-6712, 1993 WL 377064, at *11 (E.D. Pa. Sept. 15, 1993).  As the County correctly points out, it would have to re-create the entire investigation, including laboratory analysis on specific items of evidence, in order to determine whether the underlying data and conclusions are true and accurate.  This would require an after-the-fact undertaking which would be inordinately burdensome, if not impossible, at this point.

It is true that when a party responds that it cannot admit or deny a matter, it must make "reasonable inquiry" of "information known or readily obtainable." Fed. R. Civ. P. 36(a).  However, "what constitutes 'reasonable inquiry' and what material is 'readily obtainable' is a relative matter that depends upon the facts of each case . . .  Generally, a 'reasonable inquiry' is limited to review and inquiry of those persons and documents that are within the responding party's control." T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 43 (S.D.N.Y. 1997).

> The requirement of 'reasonable inquiry' does not generally extend to third parties . . .  It is true, as plaintiff argues, that where a non-hostile

> third party has relevant information which is readily available, a responding party may have an obligation to seek out that information in formulating a response to requests to admit . . .   What I cannot accept is plaintiff's position that defendant must admit as true the statements of former Bank employees about Bank matters which are outside defendant's knowledge . . .   Rule 36 responses become, in effect, sworn evidence that is binding upon the respondent at trial.  Oppenheimer is not compelled to be bound by a version of events presented by third parties . . ..

Id., at 43-44.  *See also*, Dubin v. E.F. Hutton Group, Inc., 125 F.R.D. 372, 374 (S.D.N.Y. 1989)

("reasonable inquiry"does not require the responding party to interview its former employee); Cada

v. Costa Line, Inc., 95 F.R.D. 346, 348 (N.D. Ill. 1982):

> Some of the Requests plainly call for admissions as to matters of opinion that could be eked out by following in Watt's footsteps: interviewing crew members and other persons, engaging in research and pursuing other leads that-in the context of this litigation-are apt subjects for investigation by Cadas in their own preparation for trial . . .   [T]he Court would be disinclined to thrust on Costas, as a condition of making a good faith statement of "reasonable inquiry" under Rule 36(a), the burden of doing Cadas' job for them.

Plaintiff contends that the County worked together with APD and the FBI in preparing the reports that are the subject of its Requests for Admission, and therefore it would not be unreasonable to expect the County to make inquiry of the third parties and verify the accuracy of the reports.  The reports do not lend themselves to this sort of "inquiry," however.  The first APD report authored by Michael G. Haag, which is the subject of Request No. 2, includes (1) detailed lists of evidence received from APD; (2) a notation that the Sheriff's Department had requested a comparison of projectiles and casings to firearms, and an examination of firearms-related evidence; and (3) a statement of the preliminary result of those examinations, along with a notation that a second report would be generated once further ballistic testing had been done.  [Doc. 83, Ex.1].

The second Haag report, which is the subject of Request No. 3,  includes the conclusion that the bullet found in decedent's body showed no signs of having passed through glass, that the bullet is of the type fired by Deputy Gonzales, and that the bullet must have passed through the driver's side window opening before striking decedent.  Also in this report, Haag makes note of the fact that other projectile items showed evidence of having passed through glass, that some showed no evidence one way or the other, and that certain items showed visible blood.  [Doc. 83, Ex. 2].

The FBI Report which is the subject of Request No. 6 [Doc. 83, Ex. 3] was also prepared at the instance of the Sheriff's Department and is similar in nature to the two APD reports.  It gives a detailed listing of specimens received and then reports on the results of laboratory findings, focusing primarily on the existence or nonexistence of glass in certain bullet fragments, giving also the source of any such glass, and noting the fact that particular specimens could not be tested.

The Court agrees with the County's assertion that it could not admit the veracity of the above three reports without starting from scratch and reproducing the laboratory testing and analysis. Plaintiff could validly have requested that the County admit or deny that its employees gathered the specimens listed in the report, or that its employees supplied the specimens to APD and the FBI, or that the County asked these other agencies to prepare the reports, or that the reports are what they purport to be.  But the County cannot be forced to admit or deny that the testing done by other agencies was done properly or that the results thereof are accurate; this would go beyond "reasonable inquiry."

The County, in a letter dated April 18, 2003, told Plaintiff that it "has no reason to suspect that the work done by APD and FBI personnel was done in an inaccurate manner," but that it could not verify work that it had not performed.  The Court agrees with this statement and finds that the

6

County's responses to Requests 2,4, and 6 comport with its obligations under Rule 36.

Request No. 8 asks the County to admit the veracity of a table entitled "FBI Laboratory Glass Material Analysis Matrix," which was created by one of the County's own employees. Detective Greg Marcantel stated in his deposition that he compiled the table from data supplied by the FBI and that he prepared it as a means to help him understand the FBI's test results. Plaintiff's request that the County admit the "veracity" of the table is unanswerable for the same reasons that apply to Requests 2, 4, and 6. The County, while acknowledging that it has no reason to think the APD's or FBI's test results are inaccurate, does not want to be forced into a position of vouching for the accuracy of conclusions drawn by third parties, which then become "sworn evidence . . . binding upon [it] at trial." T. Rowe Price, at 43. Rule 36 does not require this, and the Court will not order the County to admit or deny facts and conclusions when it does not have the means to do so.

## Order

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Defendant Board of County Commissioners of Bernalillo County to Respond to Plaintiff's Requests for Admission [Doc. 83] is denied.

*Lorenzo F. Garcia*
_____
Lorenzo F. Garcia
United States Magistrate Judge

7